**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Irving E. MILLER and Frederick T. Hyman, Defendants-Appellees.**

**No. 73–1509.**

United States Court of Appeals, Fifth Circuit.

March 18, 1974.

Rehearing and Rehearing En Banc Denied April 19, 1974.

William L. McCulley, Dept. of Justice, Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Willard McBride, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Daniel S. Pearson, Miami, Fla., John M. Robertson, Orlando, Fla., for defendants-appellees.

Before TUTTLE, GEWIN and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

■ Pursuant to the Criminal Justice Act,[1] the Government appeals from an order dismissing 9 counts of a 12 count indictment returned against taxpayer Irving E. Miller and his tax preparer Frederick T. Hyman. In an abbreviated order issued on February 2, 1973, the district court granted a motion to dismiss counts I–IX of the indictment. In a second order rendered the same day, the district court granted defendants' motion to suppress evidence allegedly seized by agents of the Internal Revenue Service (IRS) in violation of the fourth amendment. Unlike the suppression order, the order granting the motion to dismiss the indictment failed to articulate the reasoning upon which it was predicated. Nevertheless, relying upon the grounds advanced in the various motions filed below and reit-

---

1. 18 U.S.C. § 3731 (Supp.1973):
 "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
 An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding."

A motion to dismiss the appeal as barred by § 3731 on double jeopardy grounds, carried with the case, is herein denied. In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Supreme Court held that an appeal from the dismissal of an indictment because of pre-indictment delay was not barred by double jeopardy. Its reasoning was that "[t]he motion to dismiss rested on grounds that had nothing to do with guilt or innocence or the truth of the allegations in the indictment but was, rather, a plea in the nature of confession and avoidance. . . ." 404 U.S. at 312, 92 S.Ct. at 459, 30 L.Ed.2d at 474. The import of this reasoning is that dismissal of an indictment on a plea of confession and avoidance is not tantamount to an acquittal. Since appellees in their motion to dismiss the appeal draw the opposite conclusion, their motion must be denied.

erated on appeal and the reasoning adverted to in the court's suppression order, we reverse.

### I

On August 25, 1972 a grand jury returned a 12 count indictment against Miller and Hyman, charging them in count I with conspiracy to obstruct the lawful functions of the IRS [2] and in counts II–IX with making, under penalty of perjury, income tax returns for the years 1962–69 which they did not believe to be true and correct as to every material matter.[3] Counts X–XII charged Hyman alone with knowingly and willfully proffering materially false and fraudulent representations with respect to corporate income tax statements filed with the IRS in 1968.[4]

In response, defendants filed several motions to dismiss the indictment. Count I, the conspiracy charge, was claimed to be vitiated by the failure to enumerate any overt acts which were in themselves unlawful or involved any conduct other than that required by law to be performed. Counts II–V, it was asserted, were time-barred by the 6 year statute of limitations, *see* 26 U.S.C. § 6531 (1970).[5] Defendants maintained that counts VI–IX should be dismissed and portions of count I struck on ac-

count of alleged prosecutorial misconduct in attempting, albeit abortively, to subpoena two critical defense witnesses to appear before a New York grand jury investigating a related potential delinquency in an estate tax return the two witnesses had helped to prepare and file.[6] This motion was prompted by the fact that at a hearing on a motion to quash the subpoenas before the federal district court in New York, the prosecution attempted to legitimatize its issuance of the subpoenas with the observation that the two witnesses, Louis Feil and Irving Kaye, might be amenable to prosecution under section 7206(1) for preparation of a false return.

Dismissal of counts II–IX was also sought for three additional reasons. Both defendants assigned as fatally defective first, inclusion of the allegation that defendants "caused to be made and subscribed" a return which was false as to a material matter as well as "making and subscribing" such a return, the latter of which alone is expressly proscribed by section 7206(1), and second, inclusion of an allegation in each count that income was reported as gross income while there is no line on the return designated gross income. Third, Hyman alone contended that the counts were fatally defective as to him because

2. 18 U.S.C. § 371 (1970):
"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

3. 26 U.S.C. § 7206(1) applies to:
"Any person who—
(1) Declaration under penalties of perjury. —Willfully makes and subscribes any return, statement or other document which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;"

4. 18 U.S.C. § 1001 (1970):
"Whoever, in any matter within the jurisdiction of any department or agency of the

United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

5. Subsection 5 of this statute, in providing that prosecution for a violation of section 7206(1) must be brought within 6 years after the offense is committed, obviates the applicability of the general 3 year statute of limitations for offenses under the internal revenue laws.

6. Kaye and Feil were the accountant and executor, respectively, for the estate of Robert Faber. Faber had possessed an interest in 5 corporations from which Miller had withdrawn $1,200,000 from 1966–69.

he, as a tax preparer, could only be prosecuted under 26 U.S.C. § 7206(2) [7] for aiding in the preparation of a false return and could not be prosecuted under section 7206(1) as a "maker" of a return. In addition both defendants maintained that count IV, in omitting an allegation that Miller's 1964 tax return "substantially understated gross income," was insufficient.

Finally, defendants also filed a motion to suppress evidence purportedly seized in violation of the fourth amendment. In response to a summons issued pursuant to 26 U.S.C. § 7602 (1970), [8] defendants and IRS agents had agreed by letter that the latter could inspect certain records on premises provided by defendants. Defendants claimed and the district court agreed that by removing some of these records and retaining them for inspection, the IRS agents exceeded the scope of consent granted in the accommodation worked out between defendants and the IRS.

## II

We proceed now to a consideration of the issues presented on appeal. As was noted earlier, the order granting the motion to suppress evidence outlines the reasons for the district court's disposition. In contrast, the order dismissing counts I–IX of the indictment is bereft of such reasoning. Consequently, adequate review of the propriety of the district court's action compels an examination of each of the abovementioned grounds proffered in the various motions to dismiss the indictment. We consider them seriatim.

### A. Count I—Overt Acts

Count I alleges that from April 15, 1958 until the date of the indictment, defendants conspired to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the IRS. Among other allegedly infirm actions of the defendants, paragraphs 2 through 6 of count I list the following: first, failing to file corporate income tax returns for Egyptian, Inc., as well as for other corporations for which the defendants had the responsibility of filing returns; [9] second, falsely representing to IRS agents that such returns had been filed; third, falsely representing that certain payments made by Palm Beach Development Sales Corporation (Palm Beach) inured to the benefit of a second corporation, Concord International, Inc., as opposed to that of Irving E. Miller; fourth, falsely representing that certain payments made by Palm Beach to Creative Realty Corporation were properly reported as income to Concord International, Inc.; and finally, falsely representing that numerous documents submitted to the IRS for inspection came into existence on dates in advance of those upon which the documents were actually prepared. Each of the 12 overt acts enumerated in count I, however, while chronicling the course of conduct pursued by defendants failed to allege that such conduct was unlawful. Representative of those listed is overt

---

7. Section 7206(2) applies to:
 "Any person who—
 (2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document;"

8. Section 7602 authorizes the Commissioner of Internal Revenue or his agent to examine books, papers or records relevant or material to a matter under investigation.

9. The other corporations for which defendants were purportedly responsible for filing returns are Congress Enterprises, Inc., Concord International, Inc., Creative Realty Corporation, and Palm Beach Development Sales Corporation (Palm Beach). While the record indicates that Miller may have had a 50 percent ownership interest in each corporation, it fails to reveal precisely what role he played in their governance.

act number one: "On or about July 18, 1966, the defendants prepared and filed, and caused to be filed, with Internal Revenue Service an individual income tax return of Irving E. and Shirley L. Miller for the calendar year 1962." The omission of an allegation of unlawful preparation in each of the designated overt acts prompted defendants to move to dismiss count I.

██ Mindful of the principle that the sufficiency of an indictment is to be tested by practical not technical considerations, see Robbins v. United States, 476 F.2d 26, 30 (10th Cir. 1973); United States ex rel. Harris v. State of Illinois, 457 F.2d 191, 197 (7th Cir.), cert. denied, 409 U.S. 860, 93 S.Ct. 147, 34 L. Ed.2d 106 (1972); United States v. Missler, 414 F.2d 1293, 1297 (4th Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970), we conclude that count I is not insufficient for the reasons assigned by defendants. The overt acts alleged, when read in conjunction with paragraphs 2 through 6 of count I, sufficiently apprise the defendants of the unlawful conduct with which they are charged.

B. *Counts II–V—Statute of Limitations*

Counts II–V allege that on or about July 18, 1966, defendants filed, under penalty of perjury, income tax returns for the years 1962–66 inclusive, which returns they did not believe to be true and correct as to every material matter. Although as to these counts, the indictment returned on August 25, 1972 was ostensibly time-barred by the 6 year statute of limitations set forth in 26 U. S.C. § 6531 (1970), the Government had

invoked that section's 9 month extension provision which stipulates that the filing of a complaint before a Commissioner within the 6 year period extends the time within which an indictment may be obtained after the complaint is filed for an additional 9 months. Defendants seek to vitiate the effect of the extension provision on two grounds. First, construing section 6531 to read that the grace period can be availed of only when a complaint is obtained at a time when an empaneled grand jury is not or cannot be brought into session, defendants point to the fact that at several times before the Government filed its complaint, an empaneled grand jury could have been called into session.[10] Second, they claim that the complaint, in failing to set forth the precise amount of taxes unreported, was not sufficiently specific to establish probable cause. Under Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), it is argued that this latter deficiency would defeat the triggering of the extension of the limitations period.

██ Defendants' construction of section 6531 is untenable. In Jaben v. United States, 381 U.S. 214, 219, 85 S. Ct. 1365, 1368, 14 L.Ed.2d 345, 350 (1965), the Supreme Court announced that the statute was "intended to deal with the situation in which the Government has its case made within the normal limitations period but cannot obtain an indictment because of the grand jury schedule." And in adumbrating the meaning of this language, Justice Goldberg noted in a concurring opinion that the purpose of the extension provision "is to avoid penalizing the Government when a criminal defendant cannot be in-

10. It is uncontroverted that the Government could have obtained authorization from the court to telephonically call a grand jury into session on the day it filed the complaint before the Commissioner. Had defendants contended that prosecutorial dilatoriness in obtaining an indictment resulted in actual prejudice, a due process issue would have been presented. The viability of such a contention probably would not have been foreclosed by the fact that the indictment was subsequent-

ly obtained within the extended statutory period. See United States v. Marion, 404 U.S. 307, 324–325, 92 S.Ct. 455, 465, 30 L.Ed. 2d 468, 481 (1971) (dicta); United States v. Edwards, 458 F.2d 875, 882 (5th Cir. 1972). Cf. United States v. Zane, 489 F.2d 269, at 270 (5th Cir. 1973) (dicta). The possibility of asserting this defense obviates in part the need for the "protective" construction of section 6531 advanced by defendants.

dicted merely because no grand jury is *sitting at the time the limitation period expires."* *Id.* at 226, 85 S.Ct. at 1372, 14 L.Ed.2d at 354 (Goldberg, J., concurring in part, dissenting in part) (emphasis added). Hence, the prosecution's ability to call an empaneled grand jury into session is of no consequence to the activation of the 9 month extension period.

█ Moreover, we hasten to note that the mere fact that a grand jury is sitting at the time a complaint is resorted to does not preclude such activation.[11] This conclusion is compelled by our decision in United States v. Bland, 458 F.2d 1, 4 (5th Cir. 1972) where the issue presented was "whether the refusal to indict by the *grand jury in session ·at the time the complaint was filed* cuts off further extension of the applicable period of limitations" (emphasis added). We held that the filing of a sufficient complaint before expiration of the 6 year period extended the time within which the Government could obtain an indictment for an additional nine months.

█ Defendants' contention that the complaint fails to set forth facts sufficient to support a finding of probable cause is also unavailing. The complainant, IRS agent O'Dea, asserted in "Count I" of the Complaint that based upon his examination of joint income tax returns signed by the defendants, and his interviews with and examinations of the records of third parties with whom Miller and Hyman had transacted business, he had personal knowledge that Miller and Hyman "then and there well knew and believed, IRVING E. MILLER received substantial gross income in addition to that heretofore stated and the net short term capital loss reported of $78,873.58 and the net long term capital loss reported of $61,854.59 were substantially overstated." [12] The complaint dif-

fers from that countenanced in Jaben v. United States, *supra,* in only one fundamental respect, namely it fails to enumerate the amount of income which should have been returned as opposed to that which was returned. Defendants claim that this omission condemns the efficacy of the complaint.

We cannot agree. Indeed, defendants' position, contingent upon the proposition that the requirements prescribed in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) should be engrafted onto complaints alleging violations of the internal revenue laws, was expressly rejected in Jaben v. United States, *supra.* Addressing the distinction between *Giordenello* and the situation presented to the Court in *Jaben,* Justice Harlan asserted that:

> "Beyond the substance of complaint there is a material distinction in the nature of the offense charged. Some offenses are subject to putative establishment by blunt and concise factual allegations, e. g., 'A saw narcotics in B's possession,' whereas 'A saw B file a false tax return' does not mean very much in a tax evasion case. Establishment of grounds for belief that an offense has been committed often requires a reconstruction of the taxpayer's income from many individually unrevealing facts which are not susceptible of a concise statement in a complaint."

*Id.,* 381 U.S. at 223–224, 85 S.Ct. at 1370, 14 L.Ed.2d at 352. Thus, Justice Harlan concluded that a complaint instituted before a Commissioner passes muster if it contains enough information to "enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the ·further steps of the criminal process." *Id.* at 224–225, 85 S.Ct. at 1371, 14 L.Ed.2d at 353.

---

11. Count V of the indictment, posits July 21, 1966 as the date the offense cited therein was committed. Since a grand jury was sitting on July 20, 1972—one day before the 6 year period expired—it is necessary for us to consider this issue.

12. We refer to "count I" of the Complaint as merely illustrative of the 4 counts included therein.

We conclude that the complaint filed herein satisfies these standards. Here, unlike in *Jaben* where the gravamen of the complaint was tax evasion, the defendants were charged with falsely making a tax return. Thus, even if *Jaben* were deemed to mandate the computation of deficiencies in a complaint in a tax evasion case, it could not be extended to require such computations where the gravamen of the complaint is the submission of a false statement. In view of the fact that the Government need not adduce evidence of a deficiency in order for a conviction under section 7206(1) to be sustained, *see* United States v. Jernigan, 411 F.2d 471, 473 (5th Cir.), cert. denied, 396 U.S. 972, 90 S.Ct. 262, 24 L.Ed.2d 225 (1969); *cf.* United States v. DiVarco, 484 F.2d 670, 673 (7th Cir. 1973); United States v. Flynn, 481 F.2d 11, 13 (1st Cir. 1973), it would be incongruous to require that such computations be set forth in a section 7206(1) complaint.[13]

## C. Counts VI–IX and Portions of Count I—Abuse of Process

Counts VI–IX charge defendants with the same substantive offense as that assigned in counts II–IV, but for the calendar years 1966–69. Defendants sought dismissal of these counts and the striking of those portions of count I which refer to any conduct of defendants regarding tax returns of Miller and his wife for 1966–69, on account of prosecutorial misconduct. This claim was prompted by the following sequence of events.

On December 4, 1972, well after the time the defendants were indicted, a federal grand jury in New York issued subpoenas to Irving Kaye, Louis Feil, Nathan Gelden and Herbert Wallach, Jr., in the course of its investigation of the propriety of the estate tax return of Robert Faber. Faber held, on paper, a 50 percent interest in each of 5 corporations from which Miller had withdrawn $1,200,000 from 1966–69. Because these withdrawals were claimed by the prosecution to have produced unreported gross income or capital gains inuring to Miller's benefit, the IRS was desirous of determining whether in fact Faber was a 50 percent owner, and ultimately the exact nature of these financial transactions. And because Kaye and Feil would be the only persons other than defendants who could illuminate the precise business relationship of Faber and Miller, their availability in the instant prosecution was critical to the defendants.

Beyond claiming that the mere attempt to subpoena these witnesses constituted an abuse of process, defendants advert to what transpired at the hearing in New York on the federal district court's order to show cause why the subpoena should not be quashed.[14] At this hearing, the prosecution announced that if Faber did not in fact possess a 50 percent interest, Kaye and Feil "would be subject to [prosecution] under Section 7206, Title 26, U.S.Code for preparing and submitting a return they knew was not correct of any material matter . . . ." and if Faber did possess such an interest, they "could be subject to [prosecution under] 7601" for underevaluating the assets of the corporation. These statements, offered by the prose-

---

13. Our conclusion is buttressed by the fact that both the district court and the Eighth Circuit Court of Appeals, in *Jaben, see* 225 F. Supp. 47 (W.D.Mo.1963), aff'd, 333 F.2d 535, 537 (8th Cir. 1964) were unpersuaded by defendant's reliance on United States v. Greenberg, 320 F.2d 467 (9th Cir. 1963). The complaint rejected by the court in *Greenberg* was similar to although less specific than that presented in the instant case in that here, agent O'Dea did set forth some figures which indicated he had examined Miller's tax return.

14. The district court in New York did grant the motion to quash the subpoena. A reading of the transcript of this hearing suggests that its decision was essentially a prophylactic measure and was not, as defendants suggest, based on the district court's view that the IRS had no legitimate reasons for conducting the particular investigation.

cution in hopes of convincing the court that they were conducting a bona fide investigation of Faber's estate tax return, are characterized by defendants as constituting prosecutorial intimidation. Kaye and Feil, it is asserted, will claim the fifth amendment at defendants' trial in the face of the aforementioned governmental "intimidation," and therein thwart the presentation of a defense.

■■■■■ The propriety of granting a motion to dismiss an indictment under F.R.Crim.Pro. Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.[15] In this case, dismissal of the indictment pursuant to rule 12 could be sustained only if it is proper to presage, as defendants invariably importuned the district court to do, that Kaye and Feil would have claimed the privilege against self-incrimination when called as witnesses at trial and whether properly so, or alternatively phrased, whether the defendants' claim of duress induced by prosecutorial misconduct is one amenable to pretrial disposition. Concluding that defendants' claims merely invite the court to engage in Delphian pronouncements, we are constrained to hold that dismissal of the indictment was premature in this case.

This conclusion is compelled in part by the Supreme Court's decision in Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) where the defendant characterized as prosecutorial misconduct the decision to ask incriminating questions of witnesses concerning their relationship with him "knowing" that the witnesses would invoke the fifth amendment and thereby allegedly implicate the defendant in criminality.[16] The Court admonished

against staying the prosecution's hand, solely upon the defense's *prediction* that a valid claim of privilege would subsequently be interposed:

> "It is true, of course, that Mr. Fitzgerald [counsel for defendant] announced that the Kahns [the two witnesses] would invoke their testimonial privilege if questioned. But certainly the prosecutor need not accept at face value every asserted claim of privilege. . . ."

*Id.* at 188, 83 S.Ct. at 1155, 10 L.Ed.2d at 284. Similarly, whether Kaye and Feil will invoke the privilege, and if so, whether their claim would be valid is a matter better resolved during and not before trial.

■■■■ Our conclusion is also compelled by the fact that the question of whether prosecutorial conduct amounts to duress is one expressly deemed by the Court to be appropriately disposed of at the trial stage. In United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969), for example, the defendant, prosecuted for a violation of the law in connection with wagering activities, asserted that criminal sanctions for failure to file a special internal revenue return, coupled with the danger of incrimination if he filed truthfully, produced constitutionally infirm coercion. In rejecting this claim the Court responded that "the question whether Knox's predicament contains the seeds of a 'duress' defense, or perhaps whether his statement was not made 'willfully' as required by § 1001, is one that must be determined initially at his trial." *Id.* at 83, 90 S.Ct. at 367, 24 L.Ed.2d at 280–281. The Court admonished that Federal Rule 12(b)(1) "indicates that evidentiary questions of this type should not be determined on such [pretrial] mo-

---

15. *Compare, e. g.,* United States v. Freeman, 412 F.2d 1180, 1181 (10th Cir. 1969) *with, e. g.,* United States v. Martinez, 350 F.Supp. 971, 973 (W.D.Pa.1972); United States v. Ceccerelli, 350 F.Supp. 475, 479 (W.D.Pa. 1972).

16. Namet argued that a claim of the privilege against self-incrimination by a witness when asked whether he participated in criminal activity with a defendant implies to the jury that a truthful answer would be in the affirmative. This inference, Namet claimed, could not be used against a criminal defendant.

tions." *Id.* n. 7. A similar conclusion is appropriate here.

 Moreover, we would caution that the mere attempt in this case to subpoena witnesses who may appear in other possible criminal proceedings does not necessarily amount to an abuse of process. Where the subpoena is issued pursuant to a legitimate investigation of related tax matters, proof beyond the mere fact of issuance should be required. The prosecution's assertion in the New York hearing on the motion to quash the subpoenas that Kaye and Feil could be amenable to prosecution, pending the ascertainment of delinquencies in Faber's estate tax return, appears to have been intended to dispel the suggestion that the investigation of Faber's estate tax return was not bona fide. Such language does not appear to have been utilized to harass Kaye and Feil.[17]

### D. *Counts II–IX—Sufficiency of the Indictment*

 Defendants challenged the sufficiency of counts II–IX on three grounds and assigned as insufficient, the failure of count IV to allege that they had substantially understated gross income. In view of the fact, as we noted earlier, that successful maintenance of a prosecution under section 7206(1) is not contingent upon proof of understatement of income, this latter contention is spurious. Two asserted grounds for dismissal of counts II–IX are similarly amenable to facile disposal. The first ground, that the indictment is defective because it alleged that income was reported as gross income whereas there is no line on the return designated

gross income, fails under our decision in United States v. Grayson, 416 F.2d 1073, 1076 (5th Cir. 1969) which holds that an indictment which follows the language of the statute is sufficient. The second ground, that inclusion of the charge that defendants "caused to be made" a false return in each of the counts renders them duplicitous, has merely synthetic appeal. In United States v. Ponder, 444 F.2d 816 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972) this court held that a tax return completed by a secretary under the taxpayer's auspices was one "made" by the taxpayer. It is this decision which presumably generated the deviation from the precise language of section 7206(1) in the indictment. Such deviations are not per se impermissible, *see* United States v. White, 475 F.2d 1228, 1235 (4th Cir. 1973); United States v. Berlin, 472 F.2d 1002, 1007 (2d Cir. 1973); United States v. Cluchette, 465 F.2d 749, 753 (9th Cir. 1972). The indictment avoids infirmity under the principle that where a statute, on its face or as judicially construed, specifies several alternative ways in which an offense may be committed, an indictment may allege the several alternative means of commission of the offense in the conjunctive. *Cf.* United States v. McCann, 465 F.2d 147, 162 (5th Cir. 1972); United States v. Lee, 422 F.2d 1049, 1052 (5th Cir. 1970); Fields v. United States, 408 F.2d 885, 887 (5th Cir. 1969).

 The final contention, raised by Hyman alone, is that counts II–IX of the indictment are defective because, he, as a tax preparer, cannot be prosecuted

---

17. Defendants' reliance on Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) and Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) is misplaced. In *Washington*, the Court invalidated an unequivocal prohibition against the use of testimony of persons charged or convicted as co-participants. No such prohibition is presented here. In *Webb*, the Court disapproved of the conduct of a trial judge who not only admonished defendants' sole witness of the dangers of perjury, but also implied

that he expected the witness to lie, and threatened that if he did, the court would "personally see" that his case would go to the grand jury. The Supreme Court concluded in *Webb* that the witness' claim of the privilege against self-incrimination was clearly produced by intimidation. Since the Government's observation that Kaye and Feil could be prosecuted under section 7206(1) was offered merely to legitimatize the issuance of subpoenas, the facts here are radically different from those presented in *Webb*.

under section 7206(1), but rather must be pursued under section 7206(2). The viability of this claim rests on the assumption that these two subsections are exclusive, the former, applying solely to taxpayers, and the latter applying solely to those who contribute to the preparation of a return other than their own. And it is upon this assumption that Hyman's contention falls.

While our research reveals no case in which a tax preparer of an individual return has been prosecuted under section 7206(1),[18] we would note initially that in United States v. Jernigan, 411 F.2d 471 (5th Cir.), cert. denied, 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 225 (1969), this court upheld the conviction of a preparer of a corporate income tax return under section 7206(1). Conversely, in Baker v. United States, 131 U.S.App.D. C. 7, 401 F.2d 958 (1968), on remand, 301 F.Supp. 973 (D.D.C.1969), aff'd, 139 U.S.App.D.C. 126, 430 F.2d 499 (1970), the D. C. Circuit upheld a conviction of a taxpayer for assisting another to falsify his own tax return under section 7206(2). These two cases condemn Hyman's assertion of the sanctity of the two subsections of section 7206.[19]

Moreover, even if we were to conclude otherwise, the citation in the indictment of section 7206(1) as opposed to that of section 7206(2) would not inexorably be fatal. As we noted *supra,* the validity of an indictment is determined by practical, not technical considerations. United States ex rel. Harris v. State of Illinois, *supra*; Robbins v. United States, *supra*; United States v. Missler, *supra*. The test of an indictment's sufficiency is whether it contains the elements of the offense intended to

be charged, sufficiently apprises a defendant of what he must be prepared to meet, and is detailed enough to assure against double jeopardy. *See, e. g.,* United States v. Driscoll, 454 F.2d 792, 797 (5th Cir. 1972); United States v. Bullock, 451 F.2d 884, 887–888 (5th Cir. 1971); United States v. Salazar, 485 F. 2d 1272, 1277 (2d Cir. 1973); United States v. Glup, 482 F.2d 1288, 1290 (8th Cir. 1973). Implicit in these standards is what the Supreme Court observed in United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 464, 85 L.Ed. 788, 791 (1941):

"In order to determine whether an indictment charges an offense against the United States, designation by the pleader of the statute under which he purported to lay the charge is immaterial. He may have conceived the charge under one statute which would not sustain the indictment, but it may nevertheless come within the terms of another statute."

*See also* United States v. Bethany, 489 F.2d 91, 93 (5th Cir. 1974). Since the indictment clearly places Hyman on notice of the unlawful conduct attributed to him, it is not deficient.

### E. *Suppression of Documents Seized*

The final question presented for our review is whether the Government's removal and subsequent withholding of records from the premises upon which it was agreed that they could conduct an inspection exceeded the scope of consent granted in a letter from counsel for the defendants to the Government, and hence violated the fourth amendment.[20] The following letter sent by Miller's attorney to IRS agent O'Dea is

18. Cases in which tax preparers were prosecuted under section 7206(2) include Hull v. United States, 324 F.2d 817 (5th Cir. 1963); Driscoll v. United States, 376 F.2d 254 (1st Cir. 1967); Edwards v. United States, 375 F.2d 862 (9th Cir. 1967); Hedrick v. United States, 357 F.2d 121 (10th Cir. 1966).

19. *See also* Hedrick v. United States, 357 F. 2d 121 (10th Cir. 1966) where appellant, a

C.P.A. and his employer were jointly indicted under section 7206(2).

20. At oral argument, counsel for Miller and Hyman suggested that the illegal seizure related to count I of the indictment. This argument is foreclosed by United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) and United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

claimed to limit consent to inspection and not removal:

> "This will confirm our understanding that, pursuant to the meeting held in our office this morning, you have agreed that, in lieu of the appearance of Fred Hyman, Irving Miller and Joseph Levine at your offices on January 18, 1971, as per your summonses, we will, in lieu thereof, furnish you with suitable working facilities at 1674 Meridian Avenue, Miami Beach, Florida, on January 18, so that you will be able to conduct your examination on those premises. We will also provide the services of our investigator, Mr. Nathan Zeldin, to work with you in facilitating the examination of the various books and records involved.
>
> > Sincerely yours,
> > Charles L. Ruffner"
> > [former attorney for Miller]

The district court held that this agreement expressly limited consent to examining and copying the records on the premises and presumably found that subsequent conduct on defendants' part did not vitiate the limited expression of consent. Finding these conclusions infirm, we hold that the Government did not violate defendants fourth amendment rights.[21]

A reconsideration of the facts which spawned the quoted letter convinces us that defendants did not intend to expressly limit consent to examination and copying of records on the premises furnished by defendants. Because defendants had reneged on a prior agreement to produce the records, the Government issued a summons seeking the production of records and documents of certain corporations in which Miller had an ownership interest. Charles Ruffner, Miller's former attorney, testified at the suppression hearing that Miller desired to avoid enforcement of the summons, entailing as it would production of records at an office of the IRS, for three reasons. First, the records sought were so voluminous that it would take a moving van to produce them; second, their removal would disrupt corporate business, and third, by providing the IRS with office space in close proximity to Miller's place of business, defendants would be available to aid the IRS in obtaining the exact records it wanted.

Conspicuously absent from Ruffner's explanation is any indication that the design of the conciliatory agreement regarding inspection was to disable the IRS from removing the documents from the premises furnished. Nor does the agreement itself express such a purpose. Indeed, the affirmation that defendant would provide premises for inspection of the records in lieu of production at an office of IRS belies such an assertion. Rather, it would appear that the letter, borne out of the spirit of accommodation, was intended to ameliorate the burden attendant upon transportation of the records to the IRS office. And having validly obtained possession of the documents without transgressing the terms of the inspection agreement, the IRS had as much right to test them in order to ascertain their date of preparation as it would to photostat or copy them. *See* Zap v. United States, 328 U.S. 624, 629, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477, 1482 (1946); United States v. Ponder, 444 F.2d 816, 818 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L. Ed.2d 788 (1972).

 Moreover, even assuming that we were to agree with defendants' construction of the terms of the letter, we are convinced that defendants' subsequent conduct vitiated whatever limited consent was expressed in the letter. Defendants had, upon request, permitted

---

21. We intimate no view as to whether Miller has standing to contest the seizure of the documents removed by the IRS. *See* Henzel v. United States, 296 F.2d 650 (5th Cir.

1961). In view of our holding that the search was permissible, this issue warrants no further consideration.

the IRS to remove documents other than those in question here from the premises furnished for inspection. The instant documents were removed concededly without express permission, in order to spare defendants the additional expenditure of paying another month's lease for the inspection premises. This removal was effected without incident, and indeed, appeared to have been acquiesced in when Charles Ruffner initialed an envelope received subsequent thereto, designated "Received August 2, 1971. This envelope contains copies. Internal Revenue Service has originals." Ruffner's only explanation for his acknowledgement of the receipt of copies and belated demand for return of the originals was that the agents had presented him with a *fait accompli*—they had already taken the records. In view of the circumstances under which the records were removed, however, we conclude that whatever limited consent was expressed in the letter sent to IRS agent was vitiated. Moreover, any governmental impropriety inherent in the failure to return the documents upon demand cannot deprive the removal of its initial validity. *See* United States v. Ponder, 444 F.2d 816, 818 (5th Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788 (1972); United States v. Light, 394 F.2d 908, 914 (2d Cir. 1968).

 Despite our disagreement with the district court over the consent issue, we do concur in its judgment that the IRS should be required to make available the original documents to defendants. The Government performed tests upon the documents after their removal in an effort to ascertain whether they were prepared upon the dates that Hyman claimed they were.[22] Hyman's access to them would appear critical to his ability to fashion a defense on this point. Their availability will adequately provide him with an opportunity to do so.

### III

To recapitulate, we hold that neither dismissal of counts I–IX of the indictment nor suppression of the documents is warranted. We do, however, agree with the district court and indeed the Government that the documents should be made available to defendants, with the positive injunction that they will not be damaged, mutilated, concealed, or destroyed. The district court will exercise appropriate supervision over the examination and inspection of the documents in question.

Reversed and remanded.

---

22. According to the Government, the tests demonstrated that the ink from the pen utilized in preparing the documents was manufactured at a time after the dates upon which the documents were allegedly filed. Presumably, this discovery would substantiate the offenses charged in counts X–XII. By requiring return of the originals, we can assure that Hyman has the opportunity to counteract the Government's evidence.