**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles M. CONTRIS, Defendant-Appellant.**

No. 77–5009.

United States Court of Appeals, Fifth Circuit.

April 9, 1979.

Rehearing and Rehearing En Banc Denied May 31, 1979.

Joseph C. DaPore, Lima, Ohio, for defendant-appellant.

William T. Moore, Jr., U. S. Atty., J. Michael Faulkner, Asst. U. S. Atty., Augusta, Ga., for plaintiff-appellee.

Before JONES, GODBOLD and GEE, Circuit Judges.

JONES, Circuit Judge:

The appellant, Charles M. Contris, owned and operated a meat packing plant under the name of Newberry Packing Company at Newberry, South Carolina. There horses were slaughtered and the meat was cut and packaged under the supervision of agents of the Federal government. Mrs. Ada Sue Pawneshing operated a Halfway House, so called, in Augusta, Georgia, for disabled veterans with mental problems or who were alcoholics. Augusta is a little more than sixty miles from Newberry. Contris offered to sell her beef at low prices, claiming he could do so by using cattle accidentally killed or which had broken legs or similar injuries. About a week after their meeting he sold and delivered three or four boxes of meat to her. He promised to supply her with a freezer so she could buy in quantities and sell to others. He said he would get a grinder for her so she could make hamburger meat.

On June 12, 1974, Mrs. Pawneshing, in Augusta, telephoned a meat order to Contris in Newberry. On June 21, 1974, Moses Johnson, an employee of Contris, loaded boxes of horse meat into Contris' refrigerated truck at the Newberry packing plant and drove to the Halfway House in Augusta. There Contris met Johnson, having driven there in a second truck loaded with a chest-type freezer to be used by Mrs. Pawneshing to store meat and a grinder to be used in making hamburger meat.

Contris and two helpers unloaded the freezer, placed it on a side porch, and stacked the boxes of meat inside. One of the employees at the Halfway House quoted Contris as saying that "he would have to mix some kind of fat meat with the meat that was already in the freezer to make stuff like hamburger meat." The witness was asked if Contris said anything about delivering more meat. The witness responded, "He said he would bring it back later." When asked "What was he talking about that he was going to bring back later?" the witness replied, "I presume the fat to mix with that meat." Johnson took the truck, locked and refrigerated, home with him overnight. Contris went back to Newberry.

The next morning, June 22, 1974, Johnson, with the truck, started for the place where he expected to sell the remaining meat. On the way he stopped at the house of a friend for a visit. A deputy sheriff, suspecting the truck was stolen, investigated and found that Johnson had no driver's license but had an outstanding warrant for nonsupport. Johnson was detained. He opened the truck and the deputy discovered horse meat in unlabeled boxes. The deputy called another deputy who examined the contents of the truck and found, along with unlabeled boxes of meat, a box of labels

which apparently had been affixed to boxes. The state agents sealed the truck and sent for agents of the United States Department of Agriculture. Contris represented to the agents that he had sold the meat to Johnson who had sold a part to the Halfway House and intended to sell the rest to others.

On June 23, 1974, Contris went to the Halfway House to pick up his trailer. He did not remember delivering any fat. The government agents found fifty pounds of horse fat there.

Contris was charged in a six-count indictment with illegal interstate transportation in commerce of horse meat and meat products. The district court dismissed Counts 1, 2, and 6. Count 3 charged that Contris, on June 21, 1974, transported from Newberry, South Carolina, to Augusta, Georgia, in commerce, 437 pounds of equine meat and meat food products in the form of stew meat, steaks and roasts "which were not plainly and conspicuously marked, labeled, or otherwise identified as required by regulations prescribed by the Secretary of Agriculture to show the kinds of animals from which said products were derived; done in violation of Title 21, United States Code, Sections 619 [1] and 676(a) [2]; 9 Code of Federal Regulations, Sections 316.12(b) [3] and 317.9 [4]." Count 5 of the indictment also charged that 18 U.S.C.A. § 2 [5] was violated.

The case was tried without a jury. Contris and the government expressly waived the right to request special findings of fact as provided by Rule 23(c) of the Federal Rules of Criminal Procedure. The district court made Findings and Conclusions. The district court held that Counts 3 and 5 involved but one shipment in commerce and Count 5 was merged with Count 3.

Prior to the trial Contris filed a motion to dismiss Counts 1 through 5 of the indictment on the ground that these counts failed to allege a crime punishable by law. Con-

1. No person, firm, or corporation shall sell, transport, offer for sale or transportation, or receive for transportation, in commerce, any carcasses of horses, mules, or other equines or parts of such carcasses, or the meat or meat food products thereof, unless they are plainly and conspicuously marked or labeled or otherwise identified as required by regulations prescribed by the Secretary to show the kinds of animals from which they were derived. When required by the Secretary, with respect to establishments at which inspection is maintained under this subchapter, such animals and their carcasses, parts thereof, meat and meat food products shall be prepared in establishments separate from those in which cattle, sheep, swine, or goats are slaughtered or their carcasses, parts thereof, meat or meat food products are prepared. 21 U.S.C.A. § 619.

2. Any person, firm, or corporation who violates any provision of this chapter for which no other criminal penalty is provided by this chapter shall upon conviction be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; but if such violation involves intent to defraud, or any distribution or attempted distribution of an article that is adulterated (except as defined in section 601(m)(8) of this title), such person, firm, or corporation shall be subject to imprisonment for not more than three years or a fine of not more than $10,000, or both: PROVIDED, That no person, firm, or corporation, shall be subject to penalties under this section for receiving for trans-portation any article or animal in violation of this chapter if such receipt was made in good faith, unless such person, firm, or corporation refuses to furnish on request of a representative of the Secretary the name and address of the person from whom he received such article or animal, and copies of all documents, if any there be, pertaining to the delivery of the article or animal to him. 21 U.S.C.A. § 676(a).

3. All equine carcasses and meat and other parts thereof shall be marked to show the kinds of animals from which they were derived, before the products are sold, transported, offered for sale or transportation, or received for transportation in commerce. 9 C.F.R. § 316.12(b).

4. The immediate containers of any equine products shall be labeled to show the kinds of animals from which derived when the products are sold, transported, offered for sale or transportation or received for transportation in commerce. 9 C.F.R. § 317.9.

5. (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. 18 U.S.C.A. § 2.

tris urged before the district court, and makes the same contention before this Court, that Counts 3, 4 and 5 of the indictment were fatally defective in failing to set forth the essential elements of the crimes of which he was accused. Violations of the Fifth and Sixth Amendments were asserted and it was contended that Rule 7(c) of the Federal Rules of Criminal Procedure [6] was not followed.

The appellant argues that if a violation of the regulations is to be charged, the indictment must show a failure to properly label the primal parts of an equine carcass as required by 9 C.F.R. § 316.9(b), or a failure to properly label the cartons containing stew meat, steaks and roasts of horse meat as required by 9 C.F.R. § 317.9. Contris says to the Court that the indictments were defective and a judgment of acquittal should have been entered.

■■■ The Fifth Amendment requires that persons charged with crimes shall be indicted. The Sixth Amendment provides that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation. In the leading *Russell* case, decided in 1962, the Supreme Court set out the two criteria by which the sufficiency of an indictment is to be tested. These are whether the facts stated show the essential elements of the offense, and whether the facts alleged are sufficient to permit the defendant to plead former jeopardy in a subsequent prosecution. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). Whether an indictment sufficiently charges a crime is a question of law, not of fact. *United States v. Miller*, 5th Cir., 491 F.2d 638, cert. den. 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186 (1974). The validity of an indictment is to be determined by reading the indictment as a whole. *United States v. Markham*, 5th

Cir. 1976, 537 F.2d 187. Indictments are read for their clear meaning and convictions will not be reversed because of minor deficiencies which do not prejudice the accused. *United States v. Kahn*, 7th Cir. 1967, 381 F.2d 824. Whether or not the defendant has been prejudiced is a controlling test of the validity of an indictment. *Stapleton v. United States*, 9th Cir. 1958, 260 F.2d 415. The sufficiency of an indictment is to be tested by practical rather than technical considerations. *Duke v. United States*, 5th Cir. 1956, 233 F.2d 897. The test of sufficiency is not whether the indictment could have been more artfully or precisely drawn, but whether it states the elements of the offense intended to be charged and adequately apprises the defendant of that which he must be prepared to meet. *United States v. Rosner*, S.D.N.Y.1972, 352 F.Supp. 915.

■■■ It seems clear that the deficiency in the indictment was not material, that the appellant was adequately informed of the charge against him and that he could not again be subjected to defending against the same accusation. No prejudice was shown.

■■■ Contris attacks his conviction and sentence on Count 4 of the indictment which charged the delivery on June 23, 1974 of fifty pounds of horse fat from Newberry to the Halfway House in Augusta. The district court found that

On June 23, 1974, Contris delivered to the Halfway House in Augusta from his packing plant in South Carolina fifty pounds of horse fat to be used by Mrs. Pawneshing in making hamburger. The fat was in a container which was not marked or labeled in any way to show its equine origin. Contris led Mrs. Pawneshing to believe the fat was of beef origin.

---

**6.** The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Fed.R.Crim.P. 7(c).

The evidence showed that when Contris delivered the grinder to the Halfway House on June 21, 1974, he said that fat would be needed for making hamburger. He said he would bring "it" back later. An employee of the Halfway House presumed the "it" to be brought later was fat. We also presume that fat was the "it" which was to be brought. On June 23, 1974, Contris was at the Halfway House and picked up his trailer. There was no testimony that he brought horse fat on this or any other occasion. The statement of intention and the finding thereafter of the fat at the Halfway House do not create so strong an inference that the delivery was made by Contris as to establish guilt beyond a reasonable doubt. His saying that he would bring it and it being found does not prove that he brought it. The gap is too wide to be bridged by an inference. The conviction and sentence under Count 4 must be reversed.

Other questions raised by the appellant do not require comment.

The judgment of conviction and sentence on Count 4 is reversed and the cause is remanded as to such count with direction to enter a judgment of acquittal. The judgment and sentence as to Count 3 is affirmed.

REVERSED and REMANDED in part and in part AFFIRMED.

GEE, Circuit Judge, concurring in part and in part dissenting:

I concur in the opinion of the court excepting its reversal of the conviction on Count 4. Contris declared an intention to deliver horse fat, he returned thereafter to Halfway House, and the intended amount of fat was later found there—unlabelled. No source of it other than Contris was apparent. While I agree that these facts do not compel a finding of guilt as a logical necessity, I cannot say that, viewed most favorably to the prevailing party, they are insufficient to permit a reasonable factfinder to conclude that they exclude all reasonable hypotheses of innocence. I would affirm all convictions.