UNITED STATES of America,
Plaintiff-Appellee,

v.

SHORTT ACCOUNTANCY CORPORATION, Defendant-Appellant.

No. 85–1016.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1985.

Decided April 4, 1986.

---

Jay R. Weill, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Neil F. Horton, Johnston & Horton, Oakland, Cal., for defendant-appellant.

Before DUNIWAY, ANDERSON, and PREGERSON, Circuit Judges.

DUNIWAY, Circuit Judge:

Shortt Accountancy Corporation appeals from its conviction on seven counts of making and subscribing false tax returns in violation of § 7206(1) of the Internal Revenue Code of 1954. We affirm.

## FACTS

Appellant Shortt Accountancy Corporation (SAC) is a CPA firm that performs accounting services, prepares tax returns and gives tax planning advice to its clients. Ronald Ashida was its chief operating officer and ran its day-to-day activities in 1981–82.

In the fall of 1981, Clifford Wilson contacted SAC for tax planning advice and services. In late December 1981, Ashida told Wilson that he could invest through SAC in a "straddle" position in government securities that would enable Wilson to claim a sizable deduction on his 1981 federal income tax return. A straddle is the simultaneous holding of a contract to purchase and a contract to sell a specific commodity at some time in the future. It is used to minimize risks by offsetting losses and gains. In order to claim the deduction, however, Wilson would have to backdate a promissory note so that the investment would appear to have been made in May, 1981, rather than December. The backdating was necessary, said Ashida, because Congress had changed the law to disallow deductions to taxpayers who purchased a straddle investment after June 23, 1981. Wilson agreed to consider the investment, but made no decision before the end of the year.

In early January 1982, Wilson told an Assistant U.S. Attorney about Ashida's investment advice. The Attorney put him in touch with the IRS, which proposed that Wilson cooperate with it in building a criminal case against SAC. He agreed upon the condition that the IRS reimburse him for the purchase price of the straddle position and for any fees charged him by SAC. He also understood that if SAC eventually prepared a tax return for him, the IRS would audit it and disallow any improper deductions claimed by SAC on his behalf. In that case, the IRS would assess Wilson for additional taxes owed, but would not re-

quire him to pay interest or penalties resulting from the improper deductions.

Wilson ultimately purchased a straddle position from SAC in April 1982. In addition to the purchase price of $3400, SAC charged Wilson interest calculated from May 1, 1981, so that it appeared that the transaction had occurred before the June 1981 cutoff date. No backdated documents were ultimately used in the transaction.

SAC completed preparation of Wilson's 1981 tax return in January 1983. In it, the firm claimed a $23,024 deduction for Wilson relating to his April 1982 straddle investment. Paul Whatley, who supervised the actual preparation of the return and subscribed to its correctness on behalf of SAC, based this figure on information provided to him by Ashida. Whatley did not know, when he signed the return, that the straddle investment was improperly claimed.

After receiving his 1981 return from SAC, Wilson delivered it to an IRS special agent who immediately filed it with the IRS District Director. He forwarded it to a processing center in October 1983 and Wilson has since received the tax refund claimed, plus applicable interest. He has not filed any other 1981 federal income tax return.

In the subsequent investigation of SAC's preparation of Wilson's 1981 return, the grand jury determined that SAC had prepared tax returns for at least six additional clients in which it improperly claimed deductions for straddle investments. In each case, the straddle position at issue was originally owned by other SAC clients who had purchased their interests from SAC before Congress' disallowance of the deduction in June 1981. Although these clients incurred straddle losses in May 1981 that properly could have been claimed on their 1981 tax returns, SAC determined that the original owners were oversheltered for the year and did not need the deductions. As a result, SAC, which was authorized to sell the client's interest in the straddle should it deem it to be in the client's best interest, sold their straddle positions and resulting losses to Wilson and the other new clients. Each sale occurred after the change in the law disallowing straddle deductions and each was structured to appear that it had occurred before the cutoff date.

In June 1984, the grand jury issued a fourteen count indictment charging SAC, Shortt and Ashida with violations of 18 U.S.C. § 371, conspiracy to commit an offense against or to defraud the United States, and 26 U.S.C. §§ 7206(1), false declaration under penalty of perjury, and (2), aiding preparation or presentation of false documents, under the internal revenue laws. The indictment's basis was SAC's alleged sale of interests in straddle positions after Congress disallowed deductions from such investments and its knowing preparation of tax returns claiming improper straddle deductions.

In August 1984, the defendants filed a joint motion for an evidentiary hearing on their motion to dismiss the counts relating to Wilson's return. They claimed that Wilson never intended the document prepared by SAC to represent his true 1981 federal income tax return and that his return was not, therefore, filed as required by *United States v. Dahlstrom*, 9 Cir., 1983, 713 F.2d 1423. The court denied the motion, holding that the issue was one for the jury.

At trial, defendants moved for judgment of acquittal following the opening statement and again at the close of the government's case. They claimed that a preparer of tax returns cannot be charged under § 7206(1), which proscribes making and subscribing a false return, because it cannot "make" a return within the meaning of the statute. Defendants also argued that a corporation cannot be guilty of an offense under § 7206(1) when the person who actually subscribes the false return believes it to be true and correct. The district court denied the motions.

One of defendant's defense theories at trial was that the returns it prepared were not false because Ashida had established a new partnership before the June 23, 1981 change in the law. This new partnership

allegedly acquired the interests of the original straddle owners before May 4, 1981, the date when the straddle losses later sold to Wilson and the others actually occurred. Defendant claimed that Wilson and the other new SAC clients subsequently became partners in the new partnership and thus could properly deduct the straddle losses on their 1981 returns.

In charging the jury on SAC's partnership defense theory, the trial judge included the statement that "some act must have occurred creating this parent partnership on or before May 4, 1981, in order for this theory to apply." Defendants objected to the instruction on the grounds that it was erroneous as a matter of law and deprived them of their partnership defense theory. Their objection was overruled.

The jury ultimately convicted SAC on seven counts of willfully making and subscribing as preparer false income tax returns in violation of 26 U.S.C. § 7206(1). SAC timely appeals.

### I. Evidentiary Hearing on Motion to Dismiss.

Rule 12(b) of the Federal Rules of Criminal Procedure permits any defense "which is capable of determination without the trial of the general issue" to be raised by pretrial motion. The motion must be decided before trial "unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected." Fed.R. Crim.P. 12(e). SAC argues that this language required the district court to hold an evidentiary hearing on the issue of whether government informant Wilson intended his SAC prepared return to be his true return. Presumably, SAC further contends that the issue should have been decided before trial.

▉ A pretrial motion is generally "capable of determination" before trial if it involves questions of law rather than fact. *United States v. Korn*, 5 Cir., 1977, 557 F.2d 1089, 1090; *United States v. Jones*, 6 Cir., 1976, 542 F.2d 661, 664; *United States v. Miller*, 5 Cir., 1974, 491 F.2d 638,

647. However, "a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Jones*, 542 F.2d at 664 (footnote omitted). *See United States v. Coia*, 11 Cir., 1983, 719 F.2d 1120, 1123. As the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 1969, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 . *See* 8 Moore's ¶ 12.04[1] at 12–39 (1985).

▉ Under this standard, the district court must decide the issue raised in the pretrial motion before trial if it is "entirely segregable" from the evidence to be presented at trial. *United States v. Barletta*, 1 Cir., 1981, 644 F.2d 50, 57–58. *See* Fed.R.Crim.P. 12(e); *Jones*, 542 F.2d at 664–65. If the pretrial claim is "substantially founded upon and intertwined with" evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred. *United States v. Williams*, 2 Cir., 1981, 644 F.2d 950, 952–53. *See Barletta*, 644 F.2d at 58. Finally, if an issue raised in a pretrial motion is not entirely segregable from the evidence to be presented at trial, but also does not require review of a substantial portion of that evidence, the district court has discretion to defer decision on the motion. *Barletta*, 644 F.2d at 58. *See* Notes of Advisory Committee on Fed.R.Crim.P. 12(b)(4).

▉ In this case, SAC's pretrial motion to dismiss raised both a question of fact and a question of law: (1) whether Wilson intended his SAC-prepared return to be his true return for 1981; and (2) whether such intent was required for SAC to be convicted under § 7206(1) of the Internal Revenue Code of 1954. Determination of Wilson's

intent would have required, among other things, review of Wilson's understanding with the IRS, his participation with SAC in preparing his return, and the handling of the return after SAC returned it to him. While evidence of these matters was not "substantially founded upon and intertwined with" evidence concerning the charges of making and subscribing false tax returns, there was certainly some overlap that prevented the issue from being "entirely segregable" from the evidence to be presented at trial. As a result, it was within the trial judge's sound discretion to defer the issue to jury consideration. *See Barletta,* 644 F.2d at 58.

## II. *Denial of Judgment of Acquittal on Count Five.*

SAC next argues that the district court erred as a matter of law in denying its motion for judgment of acquittal on Count Five of the indictment. The basis of the motion, as with SAC's pretrial motion to dismiss, was that Wilson had never intended his SAC-prepared return to be his "true" return for 1981 and that the return could not, therefore, serve as the basis for conviction under 26 U.S.C. § 7206(1). This court must affirm the district court if it applied the correct standard of law and if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 1979, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (emphasis in original).

SAC bases this argument on our decision in *United States v. Dahlstrom,* 9 Cir., 1983, 713 F.2d 1423. In *Dahlstrom,* we held that the filing of a return is an element of a section 7206(2) violation (assisting in the preparation of a false return) and implied that a completed filing requires that the taxpayer intend the return to represent his "true return" with the IRS. *Id.* at 1429. The taxpayer in *Dahlstrom,* who cooperated with the IRS in gathering evidence against a tax adviser, was told by his IRS contact that the fraudulent return did

not represent his true return. *Id.* at 1426. The taxpayer also prepared and filed a second return that served as his actual return for the year in question. Here, but one return was filed by Wilson and acted upon by the IRS. Even assuming, therefore, that *Dahlstrom's* "true return" requirement extends to offenses charged under section 7206(1), a question we do not decide, there is sufficient evidence in the record to permit a rational finder of fact to conclude that Wilson's return meets that requirement.

SAC concedes the differences between the handling of the returns in this case and in *Dahlstrom,* but argues that they are insignificant in light of Wilson's agreement with the IRS that he would be audited at the close of the case, but would not be assessed the usual penalties and interests on any additional taxes owed. The problem with SAC's analysis is that it implies that the only "true return" filed by a taxpayer-informant is one in which he bears the full cost of all improprieties he helps to reveal. Such a result would unfairly penalize honest taxpayers for cooperating with the IRS and would undoubtedly undermine their willingness to come forward at all. We decline to adopt so restrictive a view. Thus, the differences between *Dahlstrom* and this case are significant and support a finding that Wilson's SAC-prepared return was his "true return" for 1981.

## III. *"Making" a Return Under Section 7206(1).*

SAC claims that its convictions on seven counts of violating section 7206(1) should be reversed as a matter of law because a tax return preparer cannot "make" a return within the meaning of the statute. 26 U.S.C. § 7206(1). While SAC does not deny its participation in preparing the false returns, it claims that it could only be charged under section 7206(2) for *assisting* in the preparation of a false return. 26 U.S.C. § 7206(2). It bases its distinction on the fact that the taxpayer alone has the statutory duty to file a federal income tax return.

Nothing in the statute or case law indicates that a charge under section 7206(1) for making and subscribing a false return is based on the taxpayer's duty to file or "make" an income tax return. Instead, sections 7206(1) and 7206(2) are "closely related companion provisions" that differ in emphasis more than in substance. *United States v. Haynes*, 5 Cir., 1978, 573 F.2d 236, 240. Section 7206(1) is a perjury statute, making any person who knowingly makes and subscribes a false statement on any return criminally liable. *Id.;* 26 U.S.C. § 7206(1). Section 7206(2) has a broader sweep, making all forms of willful assistance in preparing a false return an offense. 26 U.S.C. § 7206(2). Perjury in connection with the preparation of a federal tax return is chargeable under either section. *Haynes*, 573 F.2d at 240; *see United States v. Miller*, 5 Cir., 1974, 491 F.2d 638, 649. The Fifth Circuit has considered the exact issue of whether a tax preparer can be charged under section 7206(1) rather than 7206(2) and held that he could. *Miller*, 5 Cir., 491 F.2d at 649; *see Haynes*, 573 F.2d at 240. We are persuaded to do the same.

SAC argues that our decision in another *United States v. Miller*, 9 Cir., 1976, 545 F.2d 1204, recognizes the exclusivity of sections 7206(1) and (2). We disagree. In *Miller*, we commented *sua sponte* in a footnote that the defendant, who had prepared a false return for his wife, should have been charged under section 7206(2) for assisting in the preparation of the return, rather than under section 7206(1) for subscribing the return. *Id.* at 1216 n. 16. It is not clear from the opinion whether the defendant actually committed perjury by subscribing his wife's false return or whether he merely prepared it in advance of her subscription. *Id.* In either case, we went on to hold that the possible error was not fatal because indictment under section 7206(1) contains the elements of the section 7206(2) offense sufficiently to apprise the defendant of what he has to be prepared to meet at trial and is detailed enough to assure against double jeopardy. *Id. See also Miller*, 5 Cir., 491 F.2d at 649. This holding does not conflict with our conclusion here that a tax return preparer can properly be charged under section 7206(1) for willfully making and subscribing a false return.

### IV. *Collective Intent in Subscribing the Returns.*

SAC also claims that six of its convictions under section 7206(1) should be reversed because Paul Whatley, the corporate agent who actually subscribed six of the seven contested returns on behalf of SAC, did not have the requisite intent of willfully making and subscribing a false return. While it acknowledges that Ashida, who supplied Whatley with all of his information regarding the straddle losses, did have the requisite intent, it contends that his intent is irrelevant to a section 7206(1) charge because he did not physically subscribe the return. SAC concludes that if the government wanted to charge SAC for Ashida's admittedly illegal conduct and intent, it should have drawn up the indictment under section 7206(2) or some other statute, and not under section 7206(1).

SAC's argument is completely meritless. If it were accepted by the courts, any tax return preparer could escape prosecution for perjury by arranging for an innocent employee to complete the proscribed act of subscribing a false return. This interpretation of section 7206(1) defies logic and has no support in the case law. A corporation will be held liable under section 7206(1) when its agent deliberately causes it to make and subscribe to a false income tax return.

### V. *Jury Instructions Regarding SAC's Partnership Defense Theory.*

In reviewing a trial judge's charge to the jury, the standard of review is "whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations." *Stoker v. United States*, 9 Cir., 1978, 587 F.2d 438, 440. *Accord United States v. Pazsint*, 9 Cir., 1983, 703 F.2d

420, 424. The instructions must be considered in the context of the whole trial and "[i]solated, individual statements do not by themselves establish error." *United States v. Elksnis,* 9 Cir., 1975, 528 F.2d 236, 238; *United States v. Guillette,* 2 Cir., 1976, 547 F.2d 743, 750. A court commits reversible error when it fails to instruct the jury as to a defense theory if the theory finds some basis in the record and is supported by law. *United States v. Davis,* 9 Cir., 1979, 597 F.2d 1237, 1239. *See United States v. Escobar de Bright,* 9 Cir., 1984, 742 F.2d 1196, 1201–02.

■ One of SAC's defense theories at trial was that Ashida had formed a new partnership on May 4, 1981, so that he was legally permitted to allocate straddle losses incurred on that date to new partners who purchased their interest long after the June 23, 1981 cutoff date. This new partnership was allegedly created when Ashida, who had authority to buy or sell straddle positions for clients, formed the intention to do so on or before the critical date. In instructing the jury on SAC's partnership defense, the trial judge stated that Ashida must have taken "some act" on or before that date to establish the partnership. SAC claims that this instruction was a misstatement of the law that improperly removed the intended partnership defense from jury consideration.

SAC's theory that a partnership may be formed by the unexpressed intention of one individual seems highly improbable. While an explicit act proclaiming a partnership is certainly not required, some sort of act or conduct must take place if a partnership is to be inferred. *See, e.g., Commissioner v. Culbertson,* 1949, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659. Even assuming for the purposes of this case that "some act" is *not* required to form a partnership, the court did not commit reversible error by its comment. Its instructions on SAC's partnership defense did not begin and end with the "act" statement: They continued for several pages of the record and included a complete statement of the Supreme Court's definition of the factors to be considered in determining the existence of a partnership. *See Commissioner v. Culbertson, supra,* 337 U.S. at 742, 69 S.Ct. at 1214. From these instructions, the jury knew that formation of a partnership was not dependent on an express act, but could be inferred from numerous less tangible factors. The court's single statement to the contrary, when viewed in the context of the whole instruction, was not sufficient to mislead the jury and deprive SAC of its partnership theory of defense. *See Elksnis,* 528 F.2d at 238.

AFFIRMED.