**YOUNG BROTHERS, LTD., Plaintiff,**

**v.**

**INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 142; Tyrone Tahara; John Does 1–10; Doe Corporations 1–10; and Doe Partnerships 1–10, Defendants.**

**No. 02–00452 DAE–BMK.**

United States District Court,
D. Hawai'i.

March 11, 2003.

Ernest C. Moore, III, Paul M. Saito, Torkildson Katz Fonseca Jaffe, Moore & Hetherington, Honolulu, HI, for Young Brothers, Ltd., plaintiff.

Herbert R. Takahashi, Stanford H. Masui, Danny J. Vasconcellos, Rebecca L. Covert, Takahashi Masui & Vasconcellos, Honolulu, HI, for International Longshore and Warehouse Union, Local 142, Tyrone Tahara, John Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

DAVID ALAN EZRA, Chief Judge.

The court heard Defendants' Motion on March 10, 2003. Paul M. Saito, Esq., appeared on behalf of Plaintiff; Stanford H. Masui, Esq., appeared on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction and Failure to State a Claim ("Motion").

### BACKGROUND

Young Brothers, Ltd. ("Plaintiff") provides inter-island shipping and transportation services. Its principal office is in Honolulu, Hawaii, and during the last calendar year, it attests to grossing in excess of one million dollars in revenue and to purchasing goods or services either directly or indirectly from suppliers or manufacturers located outside Hawaii in excess of one million dollars. The International Longshore and Warehouse Union, Local 142 ("Defendant ILWU") is a union governed by the National Labor Relations Act ("NLRA") and Tyrone Tahara ("Defendant Tahara") is a business agent of Defendant ILWU.

In its Complaint, Plaintiff alleges that Defendants violated the no-strike clause of the Collective Bargaining Agreement ("CBA") between Plaintiff and Defendant ILWU. In addition to the express no-strike provision set forth in Article 23 of the CBA, the CBA included an express grievance procedure provision for employees that would culminate in final, binding arbitration of all disputes between the parties. Plaintiff alleges that Defendants failed to

pursue any grievances they had under this provision.

Plaintiff claims that at approximately 9:20 a.m. on February 8, 2002, Defendants caused an illegal work stoppage when Defendant Tahara came onto Plaintiff's property and instructed Plaintiff's employees to cease working. Employees were allegedly prevented from obeying management's order to return to work because Defendant Tahara placed himself in the path of their forklifts. Plaintiff alleges Defendant Tahara's actions caused a work stoppage and production slow down that lasted two hours.

To compensate for the delays and disruptions caused to Plaintiff's business operations, Plaintiff seeks monetary damages pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. Plaintiff also seeks compensation for damages resulting from Defendants' tortious interference with Plaintiff's contractual relations with its customers. Finally, Plaintiff seeks an injunction against Defendants ILWU and Tahara admonishing them to abide by the CBA and preventing them from participating in future work stoppages.

Defendants filed this Motion to Dismiss ("Motion") on December 16, 2002. Plaintiff filed an Opposition to Defendants' Motion ("Opposition") on February 20, 2003. Defendants' Reply to Plaintiff's Opposition ("Reply") was filed on February 27, 2003.

## STANDARD OF REVIEW

When considering whether to grant or deny a Motion to Dismiss for failure to state a claim, this court must consider the precedent set forth pursuant to Rule 12(b) of the Federal Rules of Civil Procedure ("Rule 12(b)"). Rule 12(b) allows the consideration at the pre-trial stage of any defense, objection, or request "which is capable of determination without the trial of the general issue." Fed.R.Civ.P. 12(b).

■■■ A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." *See United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not "invade the province of the ultimate finder of fact." *Id.* (internal quotations and citations omitted.)

A motion to dismiss will be granted where Plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that Plaintiff "would be entitled to no relief under any set of facts that could be proved." *Fidelity Fin. Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All allegations of material fact are taken as true and construed in a light most favorable to the Plaintiff. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 753–54 (9th Cir.1994).

■■■ This court is not required to accept as true legal conclusions presented as factual allegations if those conclusions cannot be drawn reasonably from the allegations. *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir.1986). Also, failure to delineate a cognizable legal theory should result in dismissal. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).

## DISCUSSION

Defendants petition this court to dismiss Plaintiff's Complaint on three grounds: (1)

the court lacks jurisdiction under the Norris–LaGuardia Act to issue an injunction because Plaintiff has not resorted to arbitration and the claim is moot; (2) Plaintiff is required, but has failed to exhaust contractual remedies that are identical to the relief requested in its Complaint; and (3) Plaintiff's state tort claims are preempted under Section 301 of the LMRA. In addition, Defendants argue that this court must dismiss the charges filed against Defendant Tahara in his individual capacity.

Plaintiff responds to Defendants' Motion by arguing that jurisdiction to pursue claims for monetary damages and injunctive relief against future work stoppages exists under 29 U.S.C. § 185. Plaintiff also rejects Defendants' argument that dismissal is appropriate because Plaintiff did not submit its claims to arbitration. Plaintiff argues that the CBA does not expressly require arbitration and thus, it is not Plaintiff's exclusive remedy.

Plaintiff also briefly addresses Defendants' assertion that Plaintiff's tortious interference claims are preempted by the LMRA. It maintains that an alleged interference with contract and prospective advantages does not require an interpretation of the CBA and therefore, a state claim for damages is not precluded by Section 301 of LMRA. Plaintiff also argues that suit against Defendant Tahara is appropriate because the reason for the work stoppage could be found to be outside the CBA and/or Defendant Tahara may be found to have been acting in his individual capacity. Plaintiff argues that neither Defendant ILWU nor Defendant Tahara have protection from suits under the LMRA.

## I. Jurisdiction Over Plaintiff's Damages Claim

Plaintiff argues that under 29 U.S.C. § 185 it has jurisdiction to pursue a civil action for damages arising from Defendant ILWU's alleged breach of the no-strike provision in the CBA. The plain text of this statute reads:

> Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. *Any such labor organization may sue or be sued as an entity* and in behalf of the employees whom it represents in the courts of the United States.

29 U.S.C. § 185(b) (emphasis added).

In support of its argument, Plaintiff cites case law from the Seventh Circuit that is factually and legally on point with respect to an employer's right to refuse to arbitrate and instead to pursue legal action in a federal district court, especially if the union has violated the no-strike provision. *Faultless Division v. Local Lodge No.2040 of District 153, International Association of Machinists and Aerospace Workers*, 513 F.2d 987 (7th Cir.1975); *Cuneo Press, Inc. v. Kokomo Paper Handlers' Union No. 34*, 235 F.2d 108 (7th Cir.1956). It also cites two Supreme Court opinions that set forth the general proposition that the federal district courts have jurisdiction to hear civil suits against unions. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981).

Defendants do not respond directly to Plaintiff's assertion that the failure of the union to abide by the no-strike clause makes it liable in damages for its action. Although the case law clearly allows employers to sue a union for damages, the specific terms of the contract govern the circumstances under which such a suit is appropriate. Defendants argue that Articles 30 and 36 of the CBA at issue in this case preclude a suit for damages at this time.

## A. Article 30 Requirement to Arbitrate

■ In this Motion, Defendants argue that Plaintiff's Complaint must be dismissed because Plaintiff has failed to comply with Article 30 of the CBA, which Defendants assert mandates that Plaintiff follow a specific grievance procedure in lieu of, or, at least prior to pursuing a civil action in federal district court. Plaintiff, however, argues that the clear terms of the provision do not require that it abide by the grievance procedure. Rather, the text refers explicitly to an *employee's* obligation to follow the grievance procedures. Nothing in the text suggests that *employers* are bound by the same requirements.

The dispositive case cited by Defendants, *Drake Bakeries, Inc. v. Local 50, Amer. Bakery & Confectionery Workers, Int'l. AFL–CIO*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), is distinguishable because the collective bargaining agreement at issue in *Drake Bakeries* included very broad language requiring *all* complaints, disputes or grievances regarding the interpretation or application of any matter covered by the agreement to be arbitrated before either side sought a legal remedy. *Drake Bakeries*, 370 U.S. at 258, 82 S.Ct. 1346. Defendants correctly argue that the Supreme Court in *Drake Bakeries* adhered to a policy favoring the enforcement of collective bargaining agreements. Plaintiff, however, maintains that the CBA does not include a provision that Plaintiff agrees to submit disputes to arbitration. Defendants do not counter this claim, nor do they point to any provision of the CBA in which Plaintiff specifically agrees to be bound by an arbitration clause. *Howard Electric Company v. Int'l Brotherhood of Electrical Workers, Local 570*, 423 F.2d 164, 166 (9th Cir.1970) (finding that "[a]rbitration is consensual and it is for the courts to decide if the reluctant party has given up its right to pursue any remedy it desires by virtue of the arbitration provisions in the contract").

The court finds that because the explicit terms of Article 30 require only that employees must follow the grievance procedure, this court's finding that Plaintiff had no obligation to resort to grievance procedures supports the text of the CBA and adheres to the Supreme Court's precedent. *Drake Bakeries*, 370 U.S. at 255, 82 S.Ct. 1346. Plaintiff did not explicitly agree to a requirement that it must follow the grievance procedures set forth in Article 30. Moreover, there are no grounds upon which to find that the employer must be bound by these "employee-oriented" provisions. Thus, the court finds that this court's jurisdiction is not lacking on that basis

## B. Article 36 Requirement to Arbitrate

■ Plaintiff also argues that it is not required to participate in an expedited arbitration proceeding. According to the text of Article 36 of the CBA, the employer "may" institute expedited arbitration regarding any violations that are not otherwise subject to resolution under the grievance procedures set forth in Article 30 of the CBA. There is no dispute that expedited arbitration is one option available to assist in discerning whether a violation of Article 23 of the CBA has occurred. *See* CBA, Article 36. However, once again, Plaintiff argues that nothing in the text suggests that it is "required" to participate in expedited arbitration.

Defendants seem to assert that because Article 36 provides for an expedited arbitration procedure, Plaintiff is bound to engage in arbitration. Defendants argued at the hearing that "may" could mean "shall" or "must" in the proper context. This conclusion is flawed for the obvious reason that a party is not bound to participate in

a proceeding that is essentially voluntary. The court agrees that the word "may" means that Plaintiff has the option to arbitrate. There is no textual basis for asserting that all issues regarding and related to the no-strike provision in Article 23 were required to be heard and resolved by an arbitrator. Nowhere does it state, as in both *Howard Electric* and *Drake Bakeries*, that "all disputes" must be submitted to an arbitrator.

Plaintiff also argues that Article 36 does not apply because Plaintiff seeks damages and Article 36 only provides injunctive relief to stop an ongoing work stoppage.[1] Plaintiff admits that it could be required to submit its request for injunctive relief to grievance and arbitration, as the court finds below. However, it claims that the CBA does not prevent seeking damages in a civil action. The court agrees. Here, there is no failure to exhaust contractual remedies because the CBA does not require Plaintiff to submit his claims to the arbitration process before pursuing a legal remedy. Although Plaintiff has the option of arbitrating this dispute, it is not required to do so under the CBA and therefore this court's jurisdiction is not lacking on that basis.

## II. Preemption of Plaintiff's Tort Claims by § 301

Despite the court's finding that Plaintiff may pursue its damages claim for the alleged violation of the no-strike provision of the CBA, Plaintiff's state law claim for damages resulting from Defendants' allegedly tortious interference with Plaintiff's contractual relations with its customers must be addressed separately. The court notes that in its Opposition, Plaintiff did not respond to the specific preemption arguments raised by Defendants.

■ Defendants argue that state law claims are preempted if they require the court to interpret the CBA. Defendants cite the Supreme Court's holding in *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), as establishing that Plaintiff's state law claim is preempted in light of the policy against creating potentially conflicting interpretations of labor agreements. They also cite Ninth Circuit case law to bolster their assertion that Section 301 preempts Plaintiff's state law claim. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir.1987). Because a determination regarding Plaintiff's claim of tortious interference requires this court to consider whether Defendants' actions violated Article 23 of the CBA, as well as whether they were justified under any other provision of the CBA, Defendants argue that the state claim is preempted.

In *Allis–Chalmers*, the Supreme Court cited prior precedent as follows: "[T]he subject matter of § 301(a) is peculiarly one that calls for uniform law.... The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Allis–Chalmers*, 471 U.S. at 210, 105 S.Ct. 1904 (internal citations omitted). Thus, the Court found that "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id.* Moreover, it found that "[a]ny other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* at 211, 105 S.Ct. 1904. Were Plaintiff's

---

**1.** Defendants dispute this interpretation and argue that Article 36 provides for arbitration of present and past work stoppages. It also enables the arbitrator to issue an "award," thereby implying that the arbitrator has the power to decide the issue of damages.

state law claims of tortious interference independent of the labor contract, an argument for not finding preemption might exist. Here, Defendants argue that to determine whether Defendants tortiously interfered with Plaintiff's contracts would require consideration and interpretation of the CBA. *See Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904. This court agrees that any determination of the applicability of state tort law would require consideration of the scope of various provisions of the CBA. Thus, this claim is preempted.

■■■ Defendants also argue that the allegations set forth by Plaintiff in its Complaint lack the basic elements of tortious interference. Specifically, the allegations do not describe the contracts with which Defendants allegedly interfered. Defendants argue that under Hawaii law, Plaintiff may only assert a claim of tortious interference with contractual relationships if the following elements exist: (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) absence of a justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff. *Burgess v. Arita*, 5 Hawai'i App. 581, 594, 704 P.2d 930 (1985).

Specifically, Defendants argue that Plaintiff cannot prove that Defendants intentionally induced a third party breach of contract; Plaintiff cannot prove that Defendant Tahara intentionally induced any of Plaintiff's customers to breach an existing contract. Defendants also argue that Plaintiff provides no basis for finding that any contracts between Plaintiff and its customers were actually breached. In addition, Defendants argue that Plaintiff has not proven that Defendant Tahara, who was authorized in his capacity as the ILWU's business agent to enter the prem-

ises, did not act in a manner justified under some provision of the CBA. For example, Defendants may have been justified in causing a work stoppage if an inherent job hazard existed.

The posture of the case under a Motion to Dismiss requires this court to hold as true all allegations set forth by Plaintiff. The court agrees, however, that Plaintiff has not provided any evidence suggesting grounds for finding that Defendants tortiously interfered with its customer contracts. Although Plaintiff may be able to prove damages resulting from the violation of the no-strike provision, Plaintiff has not provided evidence in response to Defendants' Motion upon which this court could find that a viable tortious interference claim exists. Thus, even if this claim were not preempted, it would still be dismissed.

### III. Plaintiff's Claim for Injunctive Relief

Plaintiff asserts that injunctive relief is appropriate and necessary on the basis of its information and belief that Defendants will repeat the actions of February 8, 2002, unless specifically restrained from doing so by this court. It alleges that no other adequate relief is available at law and that Defendants' conduct is not protected from an injunction under the Norris–LaGuardia Act.

Defendants maintain, however, that the explicit statutory provisions of the Norris–LaGuardia Act, 29 U.S.C. §§ 101–115 (2003), prohibit this court from issuing an injunction in this case. Specifically, Defendants claim that Section 104 of the Norris–LaGuardia Act prevents the court from issuing an injunction in any labor dispute that would prevent employees from "ceasing or refusing to perform any work or to remain in any relation of employment" and from publicizing a labor dispute by "patrolling, or by any other method not involving

fraud or violence." 29 U.S.C. § 104 (2003). They also claim that under Section 108 of the Norris–LaGuardia Act the court may not grant injunctive relief to any complainant "who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108 (2003).

### A. Injunctive Relief under 29 U.S.C. § 104

Defendants argue that because of the existence of the no-strike clause, the Norris–LaGuardia Act serves as a jurisdictional bar to this court's ability to grant injunctive relief. In support of this conclusion, Defendants cite *Matson Plastering Co., Inc. v. Operative, Plasterers & Cement Masons Intern. Ass'n., AFL–CIO, No. 295,* 633 F.2d 1307 (9th Cir.1980). In this case, the Ninth Circuit found that "the Norris–LaGuardia Act contains severe strictures against the issuance of injunctions in cases involving or growing out of labor disputes," and that the district court's jurisdiction is restricted in these matters. *Matson Plastering,* 633 F.2d at 1308. An exception to the prohibition on issuing injunctive relief was set forth in *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), which held that the Norris–LaGuardia Act did not prohibit an injunction to enforce an undisputed contractual obligation not to strike and to submit to binding arbitration. The Ninth Circuit limited *Boys Markets* to enabling the district court to enforce promises to arbitrate, and concluded that "[a]bsent such a clear contractual duty, Boys Markets leaves the strictures of the Norris–LaGuardia Act undisturbed." *Matson Plastering,* 633 F.2d at 1308 (citations omitted).

In *Matson Plastering,* the Ninth Circuit recognized the distinction between the situation in *Boys Markets,* where it was undisputed by the parties that the work stoppage violated the no-strike clause of the bargaining agreement, and a situation in which the underlying dispute concerned whether such a work stoppage did in fact violate the terms of the contract. *Matson Plastering,* 633 F.2d at 1308. It adhered to the finding in previous cases that the district court had no jurisdiction to consider the merits of the underlying dispute regarding the proper interpretation of the contract but was restricted to determining *whether* the contract dispute could be arbitrated under the bargaining agreement in question. *Id.*

Here, it does not appear that either party is disputing the contractual significance of the no-strike provision of the CBA, and, that there is a contractual obligation not to strike. In addition to seeking damages, Plaintiff seeks to enforce the undisputed no-strike provision. Although the damages claim requires this court to determine the merits of an underlying interpretation of the contractual obligations codified in the CBA, the specific question of whether to enforce the no-strike provision by issuing an injunction warrants the application of the *Boys Markets* exception. Defendants do not attempt to dispute that a no-strike clause exists. The fact that the no-strike provision is undisputed by both parties means (1) that Section 104 does not preclude this court from issuing an injunction requiring Defendants to abide by the no-strike provision of the CBA, and (2) that this court may determine whether the parties are obligated under the CBA to submit to arbitration the issue of the no-strike clause's applicability. *Matson Plastering,* 633 F.2d at 1309.

Without questioning Defendants' assertion that this court must inquire whether the provisions in Section 104 withdraw the jurisdiction of the court to grant the reme-

dy, Defendants are unable to persuade the court that the *Boys Markets* exception does not apply. There is no evidence that Plaintiff is seeking an injunction to prohibit employees from exercising their rights to cease or refuse to perform any work, or, from assembling peacefully, publicizing details of a labor dispute through methods not involving fraud or violence. Rather, Plaintiff is seeking to enforce an undisputed provision of the CBA.

## B. Injunctive Relief Under 29 U.S.C. § 108

 Although the court finds that Section 104 does not bar the court from granting injunctive relief based on the facts of this case, the court's analysis must consider Defendants' additional argument that Plaintiff is required to submit this grievance to arbitration. Indeed, Plaintiff's prayer for injunctive relief is barred by the provisions set forth in 29 U.S.C. § 108, which prevents injunctive relief for complainants who have failed to make every reasonable effort to settle a dispute either by negotiation, or through mediation or voluntary arbitration. As the Ninth Circuit in *Matson Plastering* found, one of the policies behind the Norris–LaGuardia Act is to encourage parties to settle without the involvement of the district courts.

Plaintiff responds to this assertion by stating that under the provisions of the CBA, it is not required to submit to arbitration. As the court found above, arbitration is not required. Irrespective of that issue, however, the court finds that under Section 108, Plaintiff should have "made a reasonable effort to settle" its grievances with Defendants. There is no evidence that it has done so. In addition, Plaintiff

has cited no Ninth Circuit precedent to support its argument. The Seventh and Tenth Circuit cases mentioned in Plaintiff's Opposition are distinguishable on their facts.[2] Also, neither case specifically addresses the Section 108 provision. *Old Ben Coal Corp. v. Local 1487, UMW,* 500 F.2d 950 (7th Cir.1974); *CF & I Steel Corp. v. UMW,* 507 F.2d 170, 173 (10th Cir.1974).

The court finds that the decision to dismiss Plaintiff's claim for injunctive relief accords with the Ninth Circuit's interpretation that the underlying policy of the Norris–LaGuardia Act is to prevent federal courts from becoming potential participants in a wide range of arbitrable disputes under the many existing and future collective bargaining contracts. The Norris–LaGuardia Act seeks to prevent district courts from preliminarily dealing with the merits of the factual and legal issues that should be decided by an arbitrator. *Matson Plastering,* 633 F.2d at 1309. Although Plaintiff may not be required to submit its damages claims to arbitration, the court finds that Section 108 prevents Plaintiff from seeking the specific remedy of injunctive relief because it has not attempted to settle the present dispute.[3]

## IV. Plaintiff's Claims for Relief from Defendant Tahara

Plaintiff argues that in addition to alleging that Defendant Tahara acted within the scope of his duty as a business agent of ILWU, it alleges a separate claim for interference with Plaintiff's contracts and prospective business relationships. In light of this court's previous determination that Plaintiff's state tort claim is preempt-

---

2. In both those cases, the parties had contractual obligations to arbitrate. As discussed above, Plaintiff in this case is not bound by any contractual obligation to arbitrate.

3. The court notes that in light of its finding that injunctive relief is inappropriate at this time pursuant to 29 U.S.C. § 108, it is unnecessary to consider Defendants' arguments that Plaintiff's claims are moot.

ed, this allegation may not serve as a basis for asserting individual liability.

More importantly, Plaintiff argues that it may be able to prove that Defendant Tahara was in fact acting not as an agent of the Union but in his individual capacity. Defendants seek to dismiss Defendant Tahara as a defendant pursuant to the provisions of 29 U.S.C. § 185(b). This section of the LMRA reads as follows: "Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b) (2003).

Plaintiff has failed to persuade this court that in light of the plain language of 29 U.S.C. § 185(b), Defendant Tahara may be held individually liable. *See also Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981). Thus, the court finds that Defendants properly move to dismiss claims against Defendant Tahara.

## CONCLUSION

For the reasons stated above, the court DENIES Defendants' Motion to Dismiss Plaintiff's suit for damages brought under Section 301 of the LMRA, 29 U.S.C. § 185. It GRANTS Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief because it finds that under 29 U.S.C. § 108, Plaintiff first must engage in a "reasonable effort" to settle the dispute for injunctive relief to be available. The court also GRANTS Defendants' Motion to Dismiss Plaintiff's suit against Defendant Tahara in his individual capacity because it finds that such suit is statutorily prohibited. Finally, Defendants' Motion to Dis-

miss Plaintiff's state law claim for tortious interference is GRANTED.

IT IS SO ORDERED.