**TURTLE ISLAND RESTORATION NETWORK; Ka Iwa Kua Lele and Center for Biological Diversity, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF COMMERCE; National Marine Fisheries; Donald L. Evans, in his official capacity as Secretary of the Department of Commerce, Defendants.**

No. CV04–00528DAE–KSC.

United States District Court,
D. Hawai'i.

Jan. 4, 2005.

Paul H. Achitoff, Isaac H. Moriwake, Earthjustice Legal Defense Fund, Honolulu, HI, for Turtle Island Restoration Network, Ka'Iwa Kua Lele, Center for Biological Diversity, plaintiffs.

Theodore G. Meeker, Office of the United States Attorney, Honolulu, HI, Jean E. Williams, Thomas L. Sansonetti, U.S. Department of Justice, ENRD Wildlife & Natural, Resources Div, Washington, DC, Seth M. Barsky, S. Jay Govindan, U.S. Department of Justice, Environment & Natural Resources Division, John S. Most, U.S. Department of Justice, Natural Resources Section, Washington, DC, for United States Department of Commerce, National Marine Fisheries Service, Donald L. Evans, in his official capacity as Secretary of the Department of Commerce, defendants.

George W. Brandt, Steven Y. Otaguro, Lyons Brandt Cook & Hiramatsu, Honolulu, Jeffrey W. Leppo, Laurie K. Beale, Stoel Rives LLP, Seattle, WA, for Hawaii Longline Association, intervenor.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, GRANTING INTERVENOR'S MOTION TO DISMISS, AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVID ALLEN EZRA, Chief Judge

The Court heard Plaintiffs' Motion and Defendants' Motion on October 11, 2004. Paul Achitoff, Esq., appeared at the hearing on behalf of Plaintiffs; Harry Yee, Assistant United States Attorney, John Most, Assistant United States Attorney, and S. Jay Govindan, Assistant United States Attorney, appeared at the hearing on behalf of Defendants. Steven Otoguro, Esq., Jeffrey Leppo, Esq., and Laurie Beale, Esq., appeared at the hearing on behalf of Intervenor. After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS Defendants' Motion to Dismiss, GRANTS Intervenor's Motion to Dismiss, and DENIES Plaintiffs' Motion for Preliminary Injunction.

## BACKGROUND

On April 2, 2004, the National Marine Fisheries Service ("NMFS") approved a regulatory amendment under the Fishery Management Plan ("FMP") for the Pelagic Fisheries of the Western Pacific Region submitted by the Western Pacific Fishery Management Council ("Council"), and issued a final rule to establish various conservation and management measures for the fisheries managed under the FMP. Among other things, the April 2, 2004 final rule eliminated the seasonal closure for longline fishing in an area south of the Hawaiian Islands and reopened the swordfish-directed component of the Hawaii-based longline fishery. The final rule also subjected the swordfish component of the fishery to restrictions on the types of hooks and baits that may be used, as well as other measures designed to address the adverse impacts of the fishery on sea turtles.

On August 30, 2004, Plaintiffs Turtle Island Restoration Network, Ka 'Iwa Lele, and Center for Biological Diversity ("Plaintiffs") filed a Complaint for Declaratory Relief and Injunctive Relief ("Complaint") and a Motion for Preliminary Injunction ("Plaintiffs' Motion"). Plaintiffs frame their challenge in terms of the Migratory Bird Treaty Act, 16 U.S.C. § 703 et seq. ("MBTA"), the National Environmental Policy Act, 42 U.S.C. § 4331 et seq. ("NEPA"), the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), and the Endangered Species Act, 16 U.S.C. § 1531 et seq. ("ESA").

On September 24, 2004, Defendants Department of Commerce, NMFS, and Donald L. Evans in his official capacity as Secretary of the Department of Commerce ("Defendants"), filed Defendants' Motion to Dismiss ("Defendants' Motion"). Defendants claim that NMFS authorized the re-opening of the fishery by final regulation promulgated on April 2, 2004, pursuant to NMFS's authority under the Magnuson–Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. § 1801, et seq. Defendants' Motion is based on the 30–day limitation provided under the MSA to challenges of NMFS actions taken pursuant to that agency's authority under the MSA. On September 24, 2004, Defendants also filed a Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Defendants' Opp.").

On October 1, 2004, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opp.") and a Reply to Defendants' Opp. ("Plaintiffs' Reply"). On September 27, 2004, Hawaii Longline Association ("Intervenor") filed a Memorandum In Support of Combined Motion to Dismiss and Opposition to Motion for Preliminary Injunction. On October 8, 2004, Defendants filed a Reply in Support of Motion to Dismiss ("Defendants' Reply").

## STANDARD OF REVIEW

Rule 12(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") allows the consideration at the pre-trial stage of any defense, objection, or request "which is capable of determination without the trial of the general issue." A motion to dismiss is generally "capable of determination before trial if it involves questions of law rather than fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir.1986). Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not "invade the province of the ultimate finder of fact." Id. (internal quotations and citations omitted).

In a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the plaintiff's allegations are not presumed to be truthful, and the plaintiff

has the burden of proof that jurisdiction exists. *Thornhill Publishing Company, Inc. v. General Telephone & Electronics Corporation,* 594 F.2d 730, 733 (9th Cir. 1979).

## DISCUSSION

The Court's jurisdiction in this matter turns on whether Plaintiffs' claims are accurately characterized as violations of various environmental statutes, or if Plaintiffs are actually attacking the regulation promulgated pursuant to the MSA, thus implicating the time bar of 16 U.S.C. § 1855(f).[1] If Plaintiffs' claims against Defendants are accurately characterized as violations of the MBTA, APA, NEPA, and the ESA, then § 1855(f) is inapplicable and this Court maintains jurisdiction to adjudicate the matter.

### A. *The Magnuson–Stevens Act*

The Magnuson–Stevens Act ("MSA"), revised in 1996 by the Sustainable Fisheries Act, Pub.L. No. 104–297, 110 Stat. 3559 (1996), 16 U.S.C. § 1801 *et seq.,* is the primary law regulating fishery resources and fishing activities in the waters of the United States. It requires the establishment of eight Regional Fishery Management Councils ("Councils"),[2] comprised of "individuals who, by reason of their occupational or other experience, scientific expertise, or training, are knowledgeable regarding the conservation and management, or the commercial or recreational harvest, of the fishery resources of the geographical area concerned." 16 U.S.C. § 1852(a)(2)(A). Each Council has the authority to govern the management of the fisheries under its specific jurisdiction. 16 U.S.C. § 1852. The independent Councils

perform this function by developing a Fishery Management Plan ("FMP") for each fishery within their jurisdiction. The FMP's establish rules for each fishery in accordance with national conservation and management standards as well as any other pertinent laws. Once a FMP is established, NMFS acting on behalf of the Secretary of Commerce evaluates the FMP and decides to what extent it warrants approval. 16 U.S.C. § 1854(a), (b). Under 16 U.S.C. § 1853(a)(1)(A), a FMP must be "necessary and appropriate for the conservation and management of the fishery" as well as be consistent with the national standards set out in the MSA, and be in compliance with any other applicable law. *Id.* at (a)(1)(C).

The Councils also prepare the regulations necessary to implement the FMP. Under 16 U.S.C. § 1854(a), the Secretary of Commerce is required to publish in the Federal Register a notice stating that a FMP, or an amendment to a FMP, is available and open to comment for 60 days from the notice of publication. 16 U.S.C. § 1854. Upon approval by NMFS, those regulations are published in the Federal Register, followed by the 60 day public comment period. 16 U.S.C. § 1854(b). Final regulations are promulgated within 30 days after the end of the comment period. *Id.*

Once a final regulation is promulgated, the MSA allows another 30 days for challenges to that regulation. The relevant section provides:

(f) Judicial review

(1) Regulations promulgated by the Secretary under this chapter and actions

---

1. For purposes of the MSA, regulations are deemed promulgated on the date they are published in the Federal Register. *Sea Watch International v. Mosbacher,* 762 F.Supp. 370, 375 (D.D.C.1991).

2. The fisheries in Hawaii, American Samoa, Guam, and the Northern Mariana Islands are under the Western Pacific Fishery Management Council ("West Pac"). 16 U.S.C. § 1852(a)(1)(H).

described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date of which the regulations are promulgated; except that-

(A) section 705 of such Title is not applicable; and

(B) the appropriate court shall only set aside any such regulation on a ground specified in section 706(2)(A), (B), (C), or (D) of such Title.

(2) The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

16 U.S.C. § 1855(f).

## B. *Leatherback Sea Turtle v. NMFS*

There has been no shortage of litigation involving the Hawaii-based longline fisheries in recent years, and the parties to the instant case have appeared before this Court on similar matters previously. In *Leatherback Sea Turtle v. National Marine Fisheries Service*, 1999 WL 33594329 (D.Hawai'i 1999), this Court granted the "extraordinary remedy" of a carefully tailored injunction. *Leatherback* at *18. Upon first glance, *Leatherback* may seem somewhat analogous factually to the instant case. However, upon closer review, *Leatherback* presented a different challenge to the ongoing fishing activities and is easily distinguishable. In *Leatherback*, the plaintiffs claimed that NMFS had failed to perform its mandatory duty under the ESA to insure that the Fishery's activities were not likely to jeopardize the continued existence of certain sea turtles, and that NMFS had failed to prepare an Environmental Impact Statement as required under NEPA.

The *Leatherback* plaintiffs sought an injunction on all activities authorized by the FMP that could harm turtles while NMFS reinitiated consultation concerning the Fishery's effect on the turtles. *Id.* at *2. In other words, the plaintiffs did not challenge a specific regulation issued by the NMFS, but rather plaintiffs claimed that NMFS failed to perform its duty under the ESA. Specifically, the plaintiffs challenged the issuance of the 1998 Biological Opinion ("BiOp"). *Id.* at *8. As explained by this Court, "[p]laintiffs allege that NMFS' conclusion that authorizing the Fishery to take 489 loggerheads, 168 olive ridleys and 244 leatherbacks each year would not jeopardize the continued existence of these species is arbitrary and capricious because it rests upon factual assumptions which are either contrary to the record or without a basis." *Id.* The plaintiffs were attacking the BiOp, a requirement under the ESA. Therefore, the provisions of the MSA were never at issue in *Leatherback* as plaintiffs were not specifically attacking a regulation promulgated under the MSA as is the case in the present matter.

In *Leatherback*, NMFS decided to do a comprehensive EIS shortly before the plaintiffs filed their motion for summary judgment based on the claim that NMFS violated NEPA and the APA by failing to prepare an EIS. *Id.* at *14. The plaintiffs claimed an EIS should have been prepared before the 1998 BiOp and the Incidental Take Statement were issued and NMFS did "not claim that an EIS or EA was prepared in conjunction with the 1998 Incidental Take Statement, nor was it apparent from the Administrative Record that such an EA or EIS was prepared at that time." *Id.* at *15. Therefore, the Court held NMFS had violated NEPA by not preparing an EA. *Id.* at *16. A pure NEPA challenge is not encumbered by time constraints in a substantive statute. *Conservation Law Foundation v. Mineta*,

131 F.Supp.2d 19, 24 (D.D.C.2001). The *Leatherback* plaintiffs' claims were unambiguously brought pursuant to NEPA and the APA. Therefore, the Court was not bound by the time limit provided by the MSA as the plaintiffs were not attacking a regulation promulgated under the MSA.

### C. *Judicial Review of The Present Matter*

"Regulations promulgated by the Secretary under the [Magnuson–Stevens] Act are subject to judicial review in accordance with the Administrative Procedure Act if a petition for such review is filed within 30 days after the date on which the regulations are promulgated." *Kalve v. Evans*, 2001 WL 603981 (D.Alaska) (quoting *Norbird Fisheries, Inc. v. NMFS*, 112 F.3d 414, 416 (9th Cir.1997)). Regulations are promulgated upon publication in the Federal Register. *Id.* (citing *Northwest Envtl. Defense Ctr. v. Brennen*, 958 F.2d 930, 934 (9th Cir.1992)). Title 16 of the United States Code "deprives the district court of jurisdiction to hear an attack on the regulation if review is not sought within 30 days of their promulgation." *Id.* (quoting *Norbird*, 112 F.3d at 416).

In the present matter, NMFS, pursuant to its authority under the MSA, promulgated the reopening of the Pelagic Fisheries of the Western Pacific Region ("Fishery") on April 2, 2004, through publication in the Federal Register. *See* 69 Fed.Reg. 17329 (April 2, 2004).[3] Therefore, any challenge to that regulatory amendment had to be brought within 30 days under § 1855(f). Plaintiffs filed their Complaint with this Court on August 30, 2004, far beyond the time allotted under § 1855(f).

In *Blue Water Fishermen's Association v. NMFS*, 158 F.Supp.2d 118, 121 (D.Mass. 2001), the court held that challenges to an emergency regulation issued by NMFS, which closed portions of the Northeast Distant Statistical Reporting Area of the Atlantic Ocean to pelagic longline fishing, were barred by § 1855(f)(1)(A) of the MSA. In *Blue Water*, the plaintiffs attempted to skirt the bar on injunctions provided by the MSA by claiming that their challenge was actually to NMFS's BiOp, issued as a requirement under the ESA. The plaintiffs reasoned, therefore, that their challenge fell under the ESA and not the MSA. The court, however, refused to view the facts through such an obscured lens, stating that, "[w]hile those regulations were premised on the jeopardy findings of the BiOp, the NMFS implemented the rule pursuant to its authority over the FMP's under the Magnuson–Stevens Act, *not the Endangered Species Act*." *Id.* at 122. (emphasis in the original). "[C]ouching the action in different statutory language is not a hook which can remove the prohibitions of the Magnuson–Stevens Act." *Id.* (internal quotation and citation omitted). *Blue Water* is instructive here in that regard.

Plaintiffs attempt to frame their claims in terms of violations of the MBTA, APA, ESA, and NEPA, but in actuality Plaintiffs challenge the reopening of the Fishery and

---

**3.** The summary provided:

NMFS has approved a regulatory amendment under the ... FMP submitted by the ... Council and issues this final rule to establish a number of conservation and management measures for the fisheries managed under the FMP.... This final rule eliminates a seasonal closure for longline fishing in an area south of the Hawaiian Islands and reopens the swordfish-directed component of the Hawaii-based longline fishery.
*Id.* at 17329–17330.
The final rule also subjected the swordfish component of the fishery to restrictions on the types of hooks and baits that may be used, as well as other measures designed to minimize adverse impacts of the fishery on sea turtles. *Id.* at 17330.

for that reason their claims are barred by the 30–day time limit under the MSA. Specifically, Plaintiffs' First Claim for Relief claims a violation of the APA and NEPA, but explains that violation as follows; "[b]y issuing an amended Fishery Management Plan for the Pelagic Fisheries of the Western Pacific Region *reopening the swordfish fishery* ... defendants violated and continue to violate NEPA." Complaint at ¶ 62 (emphasis added). Plaintiffs' Complaint also states that "[o]n February 23, 2004, NMFS issued a new Biological Opinion concluding that reopening the swordfish fishery ... would not jeopardize any species of sea turtle" (Complaint at ¶ 33) and "NMFS published a final rule implementing an amendment to the Fishery Management Plan reopening the swordfish fishery." Complaint at ¶ 37. Plaintiffs' Opp. and Reply are likewise filled with vague assertions of environmental violations that all harken back to one act: the reopening of the Fishery. Plaintiffs' claims are not "pure NEPA" claims as they suggest. Rather, all claims flow from the reopening of the Fishery pursuant to a properly promulgated amendment to the FMP. Therefore, judicial review is limited under 16 U.S.C. § 1855(f) and this Court lacks jurisdiction to adjudicate this matter.[4]

Therefore, the Court GRANTS Defendants' Motion to Dismiss, GRANTS Intervenor's Motion to Dismiss, and DENIES Plaintiffs' Motion for Preliminary Injunction.

### CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss, GRANTS Intervenor's Motion to Dismiss,

4. As the Court lacks jurisdiction, this order does not address the merits of Plaintiffs' Mo-

and DENIES Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.